MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* McALISTER, ADMX.

4-6942                     168 S. W. 2d 616

Opinion delivered February 1, 1943.

*Henry Donham* and *Richard M. Ryan*, for appellant.

*Kenneth Coffelt* and *Rowell, Rowell & Dickey*, for appellee.

SMITH, J.  Mrs. McAlister, as administratrix of the estate of her husband, sued appellant railroad company for damages. For her cause of action, she alleged that, at about 2 a. m., her husband was walking home on appellant's tracks when a southbound freight train proceeded along a curve at a terrific speed and the door of a refrigerator car, which had been left unfastened, swung open and projected over the path parallel to the track on which her husband was walking, striking and killing him.

No testimony was offered in support of the allegation as to the unfastened and swinging door. It was shown that at about the time stated McAlister had left the city of Benton for his home. He was a member of a bridge building crew, and lived in a boxcar furnished by the railroad company for that purpose. This car was on the side of the railroad tracks and could be reached only by walking along the tracks. Hunnicutt and Stinson were the last persons to see McAlister alive, and both testified that McAlister appeared to have been drinking, but that they would call him sober. McAlister went to Hunnicutt's residence from a cafe operated by Sims, who testified that McAlister left his cafe about 11 p. m., and that McAlister staggered a little in walking from the counter to the door.

McAlister's body was discovered about 5 a. m. the following morning by Griffin, a brakeman. It was lying next to the track on which northbound trains ran. There were two tracks, one for the northbound trains, the other for southbound trains. The train on which Griffin worked as a brakeman backed up to the body after its discovery. A large hole was found in the back of McAlister's head, but no other injury was discovered. McAlister's clothes were dry, but they did not find his hat. Some blood was found on the rails and crossties near the place where the

body was found, but nothing to indicate that the ballast on the track had been disturbed, and there was nothing to indicate that a scuffle had taken place. There was nothing at this point on the right-of-way or tracks to obstruct the view of an engineer or fireman on a train going either north or south except a curve in the tracks.

If it be said that this testimony supports the inference and finding that McAlister was struck by a train, it cannot be said that it proves anything more. The railroad company's record of the movement of trains shows that between the time McAlister was last seen alive and the time when his body was found three trains had passed that place. Two of these were freight trains going south and the other a passenger train going north.

The engineers and firemen on all these trains were called as witnesses, and all testified that although a constant lookout was kept none of them had seen a man on the track where McAlister's body was found. There was no fact or circumstance shown in the testimony to cast doubt upon the truthfulness of this testimony, save only the fact that McAlister's body was found with a hole in his head, which might have been caused by a moving train.

Plaintiff recovered a judgment which we are asked to affirm upon the theory that had a proper lookout been kept McAlister's presence upon the track would have been discovered in time to have avoided striking him. Section 11144, Pope's Digest, is cited in support of this contention.

This statute is commonly referred to as the lookout statute, and has been construed and applied in a very large number of cases. It was first construed in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431, 155 S. W. 510, and the construction there given it has since been often applied, and, in the application of the principles there announced, some judgments against railroad companies have been affirmed, others reversed, and still others reversed and dismissed, depending upon the testimony of the particular case.

Among other cases cited by appellee to support the judgment is the case of *Porter* v. *Scullin, et al., Receivers*

*Missouri & North Arkansas Railroad Co.,* 129 Ark. 77, 195 S. W. 17. In that case Chief Justice McCULLOCH said: "It devolved on the plaintiff, in order to make out a case, to show that if the proper lookout had been kept the presence of deceased in a perilous position on or near the track could have been discovered in time to prevent the killing."

After citing the Gibson and other cases, the Chief Justice then proceeded to say: "In *Russell* v. *Railway Company,* [113 Ark. 353, 168 S. W. 135], *supra,* we said that 'the right to recover does not arise upon mere proof of injury; but, upon the contrary, there must be proof sufficient to warrant the finding that the presence of the party injured could and would have been known to the operatives of the train and the injury to him averted by the keeping of this lookout, and the exercise of care after discovering his presence'."

Here, if it be conceded that the testimony supports the inference and finding that McAlister was struck by a train, it shows nothing more. McAlister's position at the time he was struck by a train, assuming that he was struck by one, is not shown. No one saw him walking on the track, or sitting on it, or lying between the rails, at the time he was struck, or in a position to have been seen, had the lookout required by the statute been kept. Save for the hole in his head, McAlister's body had not been mutilated, or dragged along the track, and the testimony of the engineers and firemen, which was not contradicted by any fact or circumstance shown in the testimony, that the lookout was kept may not be disregarded. It would be arbitrary to do so. The late cases of *Mo. Pac. Rd. Co.* v. *Penny,* 200 Ark. 69, 137 S. W. 2d 934; *Mo. Pac. Rd. Co.* v. *Campbell,* 200 Ark. 1056, 143 S. W. 2d 9; *Mo. Pac. Rd. Co.* v. *Severe,* 202 Ark. 277, 150 S. W. 2d 42, cite many cases announcing the principles here applied.

It may be said here, as was said in the case last cited, that to hold a railroad company responsible for McAlister's death it is necessary "to prove only that a body was found near the track upon which a traumatic injury

had been inflicted sufficient to produce death. But the law has never been so declared.''

In our opinion, the testimony did not make a case for the jury, and as the case appears to have been fully developed, the judgment will be reversed, and the cause dismissed.